UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
                                        Plaintiff,

        -vs-
                                                                DECISION AND ORDER

DRESSER RAND COMPANY,
                                                                04-CV-6300 CJS
                                        Defendant.
_____

APPEARANCES

For Plaintiff:                          Michael J. O'Brien, Esq.
                                        Judith Biltekoff, Esq.
                                        EEOC
                                        33 Whitehall Street, 5th Floor
                                        New York, New York 10004-2112

For Defendant:                          Ginger D. Schroder, Esq.
                                        Linda H. Joseph, Esq.
                                        Schroder, Joseph & Associates, LLP
                                        766 Ellicott Street
                                        Buffalo, New York 14203

INTRODUCTION

        This is an action alleging religious discrimination in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*  Now before the

Court is Defendant's  motion [#73] for partial summary judgment, and Plaintiff's cross-

motion [#81] to preclude testimony by Defendant's expert witness.  Defendant's motion is

denied, and Plaintiff's cross-motion is granted.

1

BACKGROUND

Unless otherwise noted, the following are the undisputed facts of this case, viewed in the light most-favorable to Plaintiff.  Harry M. Davis ("Davis") is a member of the Jehovah's Witness religion, and was employed by Defendant as a machinist between 1974 and 2002, although he was laid off at least once during that period.  Due to Davis's religious beliefs as a Jehovah's Witness, he refused to work on any "implement of war."  Such belief presented a problem, since Defendant regularly performed manufacturing jobs for the United States Navy.  Nevertheless, prior to 2002, on several occasions Davis had asked not to work on Navy projects, and Defendant had given him other work to do.  On December 9, 2002, Davis again asked to be given other work, rather than work on a Navy project.  Defendant responded by suspending Davis for insubordination.  On or about December 11, 2002, Davis and his union representative met with Defendant to discuss possible accommodations.  According to Defendant, no reasonable accommodation was available, since Davis needed to work the first shift in order to be able to attend to other religious obligations in the evenings, and since Defendant performed so much work for the Navy.  Plaintiff denies that Defendant offered Davis a reasonable accommodation, and the Court has determined that there are triable issues of fact on that point.[1]  On December 19, 2002, Defendant terminated Davis' employment.

On June 29, 2004, Plaintiff commenced this action on behalf of Davis.  During discovery, Davis testified at deposition[2] concerning his efforts to find another job after

---

[1]*See*, Decision and Order [#31] of the Honorable Michael A. Telesca, dated July 11, 2006.

[2]Davis was deposed on multiple occasions, in July 2005 and March 2010.

2

being fired.  In pertinent part, Davis testified to the following facts: 1) after his

employment was terminated by Defendant, he received unemployment benefits for a

year, during which he was looking for work, because he "wanted a job," and "needed a

job"[3]; 2) during that period Davis checked job listings at an employment agency and went

to "two or three" job fairs;[4] 3) Davis also applied for work at a salt plant;[5] 4) Davis made

some effort to explore the job markets in other states;[6] 5) the first post-termination job

that Davis took was with Target Builders ("Target"), which was a job offered to him by a

member of his religious congregation two weeks before his unemployment benefits ran

out; 6) Davis worked for Target, a construction firm, between January 2004 and July

2005; 7) in July 2005, Davis was hired as a machinist by Bills Machine Shop ("BMS"),

where he worked until January 2009, when he was laid off; 8) after Davis was laid off by

BMS, he again looked for jobs, and attended a job fair;[7] 9) while looking for full-time

work, Davis did not take any "odd jobs" because he feared that his unemployment

benefits would be reduced;[8] 10) Davis applied for work at the post office;[9] 11) in or about

March 2009, someone at a job fair mentioned to Davis that job retraining was available;[10]

---

[3]Docket No. [#75-1] at 36.

[4]Id. at 45.  One of the persons with whom Davis spoke at job fairs was the owner of Bill's Machine Shop, who eventually hired Plaintiff in 2005. Id. at 50.

[5]Id. at 56.

[6]Id. at 58-59.

[7]Docket No. [#73-3], Ex. I, at 48.

[8]Id. at 49.

[9]Id. at 50.

[10] Id.

12) after that date, Davis considered whether he should seek retraining to operate numerical controlled manufacturing ("CNC") machines;[11] 13) Davis considered obtaining CNC training because a lot of machine shops were "going CNC," and because he thought that he might not have been laid off from BMS if he had been proficient in CNC;[12] 14) Davis did not pursue such training because he decided to look for manual machinist jobs instead;[13] and 15) Davis sought work at various machine shops which told him that they were not hiring.[14]   Davis was born on November 4, 1954, and was forty-eight years old when Defendant terminated his employment.  Davis dropped out of high school at age sixteen, and began working.  In 1990, Davis earned his GED degree after taking the GED examination twice.

Defendant's expert, George A. Barrett ("Barrett"), provided an expert report [#73-3], Ex. J.  The stated purpose of Barrett's report is "to present the results of an independent economic evaluation of Mr. Davis's efforts to mitigate damages by obtaining alternating [sic] employment." *Id*. at 2 (emphasis added).  In his report, Barrett states, in pertinent part, "to a reasonable degree of economic certainty," the following:

> Mr. Davis had the opportunity to obtain CNC training as early as January 2003.  Despite the availability of this training in nearby Corning, New York, Mr. Davis elected not to enhance his job qualifications.  It is believed that Mr. Davis could have obtained qualifications in CNC machining by completing approximately 13 semester credit hours of courses at Corning Community College, which could be completed in approximately eight

---

[11] *Id*.

[12]*Id*. at 51.

[13]Docket No. [#83-2] at 10.

[14]Docket No. [#73-3], Ex. I, at 51.

months by September 2003.

> Had Mr. Davis attended and completed CNC training at Corning
> Community College, he would have been out of the labor force for
> approximately eight months during which he would have lost $23,846 in
> 2003 dollars in wages.  In addition, the total tuition and fees for this training
> would be approximately $2,937 in 2010 dollars.  Upon completion of this
> training, Mr. Davis would have possessed the job experience and
> qualifications necessary to obtain employment in an alternative occupation
> as early as September 2003.  His employment as a CNC machinist would
> have resulted in increased compensation and reduced probability of
> unemployment by layoff.

> Economic loss of earning capacity is established by first projecting the
> earnings anticipated to have occurred, but for Mr. Davis' termination from
> Dresser-Rand.  Next, the projected earnings which should have occurred
> following the termination, or mitigation, are established.  Mitigation earnings
> are deducted from the 'but-for' termination earnings and the resulting
> difference is economic loss of earnings.  In the case of Mr. Davis, it is
> believed that he would have easily obtained employment as a CNC
> machinist by August 2003 had he taken advantage of available vocational
> retraining in the field of computer numerical controlled manufacturing.

Barrett Report at 20.  Barrett further states that "mutiple job openings for CNC qualified

machinists *are currently available* in the Watkins Glen, New York, area[.]" *Id*. at 18

(emphasis added).

At deposition, Barrett clarified his report in several respects.  First, Barrett clarified

that he was not expressing any opinion concerning Davis's diligence in looking for a job:

"I don't see in my written report any specific opinions, statements or commentary

regarding the diligence or the lack of effort on his part in seeking employment." Barrett

Dep. at 11; *see also, id*. at 11 (Barrett agreed that there was nothing in his report

concerning the "adequacy" of Davis's "efforts" to find a job).  Barrett, therefore, does not

offer an opinion as to the reasonableness of the efforts that Davis actually made to find

work.[15]  Rather, Barrett indicates that his opinion explains "the best method" that Davis

could have used to mitigate damages. *Id*. at 111 ("I have provided you with an opinion

that I believe explains the best method by which Mr. Davis could have mitigated his

damages[.]").  Barrett further clarifies that he is not expressing an opinion concerning the

availability of CNC machinist jobs, or "non CNC machinist" jobs, at any time prior to

2010:

> Q. Are you offering an expert opinion on the availability of non CNC
> machinist jobs available to Mr. Davis?
>
> A. I did not review any material which would signify the availability or lack of
> availability of non CNC jobs in the Watkins Glen area at approximately
> 2002, so I'm not really comfortable in providing an opinion regarding that.
> However, my review of the labor market at it existed in the winter and
> spring of 2010 suggests that CNC training is far more important at this
> particular point in time than would be analog or non digital machinist trades.

Barrett Dep. at 13-14; *see also, id*. at 30 (Barrett indicated that he was making

assumptions concerning the job market in 2002, based on the job market in 2010); *see

also, id*. at 99 ("I'm not certain as to what the labor market looked like in 2002, but I can

certainly tell you that by April of 2010, that the emphasis was on CNC machinists as

opposed to analog machinists.").[16]

   Moreover, while Barrett indicated in his report that CNC vocational training was

available to Davis, at deposition he explained that a person's educational level and

---

[15]Defendant admits that to prove failure to mitigate damages, it must prove, *inter alia*, that Davis failed to make reasonable efforts to obtain suitable work.  Def. Memo of Law [#73-1] at 10.

[16]Additionally, Barrett indicated that his opinion was based on 2010 labor conditions in the "local economy," which he defined as 75 mile radius around Defendant's plant, even though he personally thought that it was "preposterous" to assume that all workers would consider taking jobs that were seventy-five miles away. *Id*. at 94-95. Barrett explained that the 75-mile radius he used was based on "Workers' Compensation Guidelines." *Id*. at 95.

intelligence might hinder him from pursuing such training:

> Q. Is prior level of education a possible barrier to retraining?
>
> A. Sure, and we look at that from a perspective of academic achievement
> levels or intelligence in general, intellectual ability in general.  If an
> individual has an inferior IQ . . . then recommending that that individual
> attend college courses would probably be a mistake because without
> appropriate cognitive therapy or without increasing their mental abilities or if
> that's not even possible, the it's unlikely that they would be successful in an
> academic background.

Barrett Dep. at 24-25; *see also, id*. at 28 (Barrett reiterated that whether a person such

as Davis, who had been away from school for along time, could succeed in a college

environment would depend  "upon the specific individual and their abilities.").   It does not

appear that Barrett is familiar with Davis's particular academic abilities, though he does

not believe that Davis has any particular impairment. *See, id*. at 30, lines 1-3; *see also id*.

at 62-63, 140.  For example, Barrett indicated that he did not know that Davis had initially

failed the GED exam.  Nevertheless, Barrett states that because Davis had a high school

education (GED) and work experience, he would probably have been accepted at

Corning Community College. *Id*. at 112-113, 115.

On November 30, 2010, Defendant filed the subject Motion for Partial Summary

Judgment [#73], in which Defendants ask the Court to limit Davis' damages for lost

wages to $26,783.00.  In that regard, Defendant maintains that Davis failed to mitigate

his damages, because he did not obtain CNC training.  Defendant contends that if Davis

had obtained such training he would have had no problem finding new employment.

Defendant states that such training would have taken Davis eight months to complete,

during which he would have lost $23,846.00 in wages.  Additionally, Defendant indicates

that tuition for CNC training would have cost $2,937.00.  Combining those two figures,

Defendant contends that Davis' damages for lost wages should be capped at

$26,783.00.

Plaintiff responds that Defendant has not shown that Davis failed to mitigate his

damages.  To the contrary, Plaintiff contends that Davis would have failed to mitigate

damages had he done what Barrett suggests, which is to go to school rather than trying

to find a job.  Additionally, on June 17, 2011, Plaintiff filed the subject motion [#81] to

preclude Barrett's expert testimony, pursuant to Rules 401, 403, and 702 of the Federal

Rules of Evidence ("FRE"), since it is "neither relevant nor reliable."  On this issue,

Plaintiff maintains that Davis had no duty to seek CNC retraining, and that the fact that

he did not is therefore irrelevant to whether he mitigated his damages.  Further, Plaintiff

states that Barrett's testimony would likely mislead a jury concerning Davis's duty to

mitigate.  Additionally, Plaintiff states that Barrett's opinions are speculative.

On August 4, 2011, counsel for the parties appeared before the undersigned for

oral argument.

ANALYSIS

*Rule 56*

Summary  judgment may not be granted unless "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary

judgment bears the burden of establishing that no genuine issue of material fact exists.

*See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "[T]he movant must make

8

a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). Once that burden has been established, the burden shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.

The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(e). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

*Title VII*

Plaintiff brings this action under Title VII, which "makes it unlawful for an employer to discriminate against any individual with respect to the 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Richardson v. New York State Dep't of Correctional Servs.*, 180 F.3d 426, 436 (2d Cir. 1999)(citations omitted), *abrogated on other grounds by Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d 199 (2nd Cir. 2006). "It is an unlawful employment practice under Title VII for an employer not to make reasonable

accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Zacharowicz v. Nassau Health Care Corp.*, No. 05-4217-cv, 177 Fed.Appx. 152, 153, 2006 WL 1070900 at *1 (2d Cir. Apr. 21, 2006) (*citing Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977); internal quotation marks omitted).

*Mitigation of Damages*

It is well settled that "[v]ictims of employment discrimination are required to mitigate their damages," and that "[a] discharged employee must use reasonable diligence in finding other suitable employment, which need not be comparable to their previous positions." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 53 (2d Cir. 1998) (citations omitted). Such duty to mitigate "is not onerous, and the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, if substantially equivalent employment is unavailable." *U.S. v. City of New York*, No. 07–CV–2067 (NGG)(RLM), 2011 WL 2259640 at *11 (E.D.N.Y. Jun. 6, 2011) (citations and internal quotation marks omitted).

The terminated employee is not required to prove that he mitigated his damages. Instead, the employer has the burden of proving that the employee failed to mitigate damages:

> Generally, an employer seeking to avoid a lost wages award bears the burden of demonstrating that a plaintiff has failed to satisfy the duty to mitigate. This may be done by establishing (1) that suitable work existed, and (2) that the employee did not make reasonable efforts to obtain it. *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47 (2d Cir.1998), however, establishes an exception to this general rule and holds that an employer is released from the duty to establish the availability of comparable employment if it can prove that the employee made no reasonable efforts

10

to seek such employment.

*Broadnax v. City of New Haven*, 415 F.3d 265, 268 (2d Cir. 2005) (citations and internal

quotation marks omitted).  In short, the "*Greenway* exception" excuses an employer from

showing that suitable employment existed, but only after the employer has shown that

the employee "failed to pursue employment *at all*." *Greenway*, 143 F.3d at 54 (emphasis

added).

The failure-to-mitigate-damages defense turns upon whether the terminated

employee acted reasonably, and such inquiry is generally a question for a jury. *See, e.g.,*

*Kim v. Columbia Univ.*, No. 06 CV 5365 (RPP), 2010 WL 2629575 at *7, n.5 (S.D.N.Y.

Jul. 1, 2010) (Denying summary judgment as to failure to mitigate, where plaintiff claimed

to be seeking work, but had been unsuccessful for eighteen years) (*citing Dailey v.*

*Societe Generale*, 108 F.3d 451, 456 (2d Cir. 1997)).

*Plaintiff's Motion to Strike Barrett's Expert Testimony*

Before considering Defendant's motion for partial summary judgment, the Court

must address Plaintiff's cross-motion to strike Barrett's expert testimony.   As discussed

above, Plaintiff contends that Barrett's opinion is not relevant, since Davis's duty to

mitigate damages did not require him to seek vocational training.  For this same reason,

Plaintiff states that Barrett's opinion should be excluded under FRE 403, since it is likely

to confuse the jury by suggesting that Davis had such a duty.   And finally, Plaintiff

maintains that Barrett's opinion is not reliable, since it is based on speculation.  Plaintiff

states, for example, that Barrett merely assumes that Davis would have been accepted

into the relevant college courses; that taking three CNC courses would have made Davis

eligible to be hired as a CNC machinist; and that CNC jobs were available prior to 2010.

"Rule 702 requires that expert testimony concern 'scientific, technical, or other specialized knowledge.'" *U.S. v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008) (citation omitted).  "In order for expert testimony to be admissible it must be relevant and not unduly prejudicial. Testimony will be relevant if it assists the trier of fact to understand the evidence or to determine a fact in issue." *U.S. v. Taylor*, 18 F.3d 55, 59 (2d Cir. 1994) (citing FRE 702).

Applying these principles, the Court finds that Barrett's expert opinion is not relevant to whether Davis mitigated his damages.  In that regard, Defendant maintains that Barrett's opinion is that "Davis made no reasonable efforts to find suitable employment by failing to obtain additional training in his field."[17]  Clearly, Defendant is incorrect in characterizing Barrett's opinion as such, since Barrett expressed no such opinion.  Rather, Barrett merely indicated that the best way for Davis to have found a job was for him to obtain CNC training.  However, Davis's failure to pursue CNC training is not relevant to show that he failed to mitigate is damages, since he was not under any obligation to seek such training. *See, Picinich v. United Parcel Service*, 583 F.Supp.2d 336, 341 (N.D.N.Y. 2008) ("[N]o court has found that one must pursue an education in order to properly mitigate one's damages.  Therefore, however ill-advised Picinich's decision to not enroll in college, it is not a proper consideration by this court in deciding whether defendants have met their burden to show that Picinich failed to make

---

[17]Def. Reply Memo [#83] at 3 ("The EEOC advances two meritless arguments, to challenge the opinion of Defendant's expert that Mr. Davis made no reasonable efforts to find suitable employment by failing to obtain additional training in his field.").

12

reasonable efforts to mitigate his damages."), *affirmed*, 318 Fed. Appx. 34, 2009 WL

833405 (2d Cir. Mar. 31, 2009); *see also*, 3 STEIN ON PERSONAL INJURY DAMAGES

TREATISE § 18:17 (3rd ed.) ("Although an injured person's failure to pursue higher

educational opportunities can be considered by the jury, it does not bar recovery for loss

of future wages on the theory that it constituted a failure to exert reasonable efforts to

secure gainful employment.") (citation omitted).

      In general, a terminated employee who pursues an education rather than seeking

a job fails to mitigate his damages. *See, Greenway v. Buffalo Hilton Hotel*, 143 F.3d at

54.  However, "a fact-finder may, under certain circumstances, conclude that one who

chooses to attend school only when diligent efforts to find work prove fruitless, satisfies

his or her duty to mitigate." *Dailey v. Societe Generale*, 108 F.3d 451, 457 (2d Cir. 1997).

In this case, Defendant unsuccessfully attempts to turn this principle on its head, by

arguing that an employee must seek vocational training to increase his chances of

finding a job, though Defendant admits it has no case authority to support this

contention.[18]

      Moreover, as discussed above, the duty to mitigate is not onerous, and an

employee is not required to go into another line of work if substantially equivalent

employment is unavailable. *U.S. v. City of New York*, 2011 WL 2259640 at *11.  Davis's

line of work was that of a manual machinist or analog machinist.  If such work was not

available, as Defendant argues, then Davis was not required to become a CNC

---

[18]Def. Reply Memo [#83] at 5 ("While no case addresses this specific issue, a failure to take training essential to the employee's ability to find work is certainly tantamount to failure to make a 'reasonable effort' to find suitable employment.").  The Court observes that even if this argument were correct, Defendant has not shown that CNC training was "essential" to Davis's' ability to find work.

machinist, which the Court views as "another line of work," since such position required

substantial additional training.  Although Defendant insists that obtaining CNC training

would have only amounted to "meet[ing] the changing circumstances of his chosen field

as a machinist,"[19]  the Court disagrees, and finds that, for purposes of the subject

analysis, analog machining and CNC machining are not the same "field." *See, N.L.R.B.*

*v. Madison Courier, Inc.*, 472 F.2d 1307, 1318 (D.C. Cir. 1972) ("In order to be entitled to

backpay, an employee must at least make reasonable efforts to find new employment

which is substantially equivalent to the position which he was discriminatorily deprived of

and is suitable to a person of *his background and experience*.") (emphasis added,

citations and internal quotation marks omitted).  Significantly, Barrett refers to CNC

machining as a separate "field." Barrett Report at 20 ( "Although Mr. Davis possesses

significant employment experience in machine equipment operation, *he lacks the*

*qualifications necessary for employment in the field of computer numeric controlled*

*(CNC) machine equipment operation*.") (emphasis added).  Similarly, Barrett refers to

CNC machining as "an alternative occupation" for Davis. *See*, Def. Response and

Counter-statement [#84-1] at 10, ¶ 6; Barrett Report at 20.

Additionally, because Barrett's opinion could well mislead a jury into thinking that

Davis had an obligation to pursue additional education in order to mitigate his damages,

it should be excluded pursuant to FRE 403.

Finally, although Barrett certifies that his "opinions are held to a reasonable

degree of economic certainty," most of the opinions he offers do not pertain to the field of

---

[19]Def. Reply Memo of Law [#83] at 1.

economics.  For all of the foregoing reasons, Plaintiff's cross-motion to exclude Barrett's expert testimony is granted.

*Defendant Is Not Entitled to Partial Summary Judgment*

Having found that Barrett's expert opinion should be excluded, Defendant's application for summary judgment is denied, since it was based primarily on Barrett's report.  To the extent that Defendant maintains that partial summary judgment is nevertheless appropriate based on Davis's purported admissions, *i.e.*, that he intentionally failed to seek work or obtain CNC training because he was content to receive unemployment benefits, the Court disagrees, since Davis made no such admissions.[20]  Moreover, even assuming *arguendo* that the Court did not strike Barrett's expert testimony, the Court would nevertheless deny Defendant's motion.  Defendant clearly cannot demonstrate that Davis "failed to pursue employment *at all*," therefore it is not entitled to partial summary judgment based on the *Greenway* exception. Consequently, Defendant could only prevail on its motion if it demonstrated, as a matter of law, that  (1) that suitable work existed, and (2) Davis did not make reasonable efforts to obtain it.  However, there are clearly issues of fact on those points.

---

[20]Davis indicated only that he did not take "handyman work or odd jobs" because he thought that it would reduce his unemployment benefits.  However, the duty to mitigate did not require Davis to take "handyman work or odd jobs." *Ford Motor Co. v. E. E. O. C.*,  458 U.S. 219, 231-232, 102 S.Ct. 3057, 3065 - 3066 (1982)  ("Although the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, he forfeits his right to backpay if he refuses a job *substantially equivalent* to the one he was denied.") (emphasis added; citation and footnote omitted).

CONCLUSION

Plaintiff's cross-motion [#81] to preclude Defendant's expert's testimony is

granted, and Defendant's  motion [#73] for partial summary judgment is denied.

SO ORDERED.

Dated: Rochester, New York
       August 10, 2011

                                        ENTER:


                                         /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge